UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

JAMES J. WOELFLE                    :
                                    :
         Plaintiff,                 :
                                    :
    v.                              :    Case No. 1:18-CV-486
                                    :
BLACK & DECKER (U.S.) INC.,         :
Individually and d/b/a DeWALT       :
INDUSTRIAL TOOL CO.,                :
                                    :
         Defendant.                 :

## OPINION AND ORDER

Plaintiff James Woelfle has brought a product liability personal injury claim against Black & Decker Inc. on theories of strict liability, negligence, and breach of warranty (express and implied). The product at issue is a DeWalt DW716 Type 2 compound miter saw (hereafter "subject saw" or "DW716 miter saw").

Defendant has moved for summary judgment seeking dismissal of Plaintiff's Complaint and Amended Complaint. ECF 80. Plaintiff has filed a cross-motion for partial summary judgment seeking dismissal of Defendant's *Scarangella* defense to Plaintiff's strict product liability claim for defective design. ECF No. 85. Further, Plaintiff has moved the Court to exclude the testimony of Defendant's liability experts, George H. Pfreunsdschuh, Thomas Jay Bodine, and Erick H. Knox. ECF No. 81. Defendant has filed a cross-motion to exclude the opinions of

Plaintiff's liability experts, Les Winter and Ruhi Arslanoglu. ECF No. 86.

For the reasons set forth below, Plaintiff's motion to exclude the opinions of Defendant's liability experts is **denied**; Defendant's cross-motion to exclude the opinions of Plaintiff's liability experts is **denied**; Defendant's motion for summary judgment is **granted in part and denied in part**; and Plaintiff's cross-motion for partial summary judgment is **denied**.

## FACTUAL BACKGROUND

This case involves the Plaintiff's use of a DW716 miter saw to cut what Plaintiff claims to have been a 2" x 2" x 36" long, pressure-treated piece of wood (the "spindle" or "workpiece") that resulted in a deep laceration on the posterior side of the Plaintiff's forearm.

Plaintiff purchased the DW716 miter saw from Home Depot in 2015. ECF 80-10 at 76: 1-13; 99:1-19. The DW716 miter saw model purchased by Plaintiff came equipped with a lower guard that covers the blade when the saw is in its resting position and that, as it is lowered, continues to cover the majority of the exposed blade as the user makes a cut into a workpiece. The DW716 model did not, however, come with a clamp as standard equipment. ECF 80-11 at 100-103. A clamp is an instrument that can be affixed to a miter saw to secure a workpiece in place while a user makes a cut. Its purpose is to prevent the

workpiece from shifting, improving both the accuracy and safety of the saw. *Id.* Alternatively, a user can use their left hand to secure a workpiece in place while using the DW716 miter saw by applying downward pressure to the workpiece and pushing it into the miter saw's table and fence.

Between 2015 and the date of the injury on December 13, 2017, Plaintiff used the subject saw, without a clamp, to cut wood for different applications without incident. The day of the incident, Plaintiff was allegedly using the DW716 miter saw to cut 2" x 2" x 36" long, pressure-treated pieces of wood for use as stairwell spindles. Plaintiff was making 45˚ angle cuts in the spindles to follow the angle of the stairwell; he set the bevel of the miter saw to zero and rotated, or mitered, the table 45˚ to the left. Plaintiff testified to then using his left hand to secure the spindles against the miter saw's table and fence approximately 10 inches from the blade while making cuts. Plaintiff allegedly made several successful 45˚ angle cuts in the spindles the day of the incident without issue. On approximately the ninth attempted cut, Plaintiff sustained an approximately 6-inch-deep laceration on the posterior side of his forearm when, as the Plaintiff testified, "[t]he saw jumped, and I – it pulled [the workpiece] to the – to the right, inwards toward the blade, and I just – it happened so quick." ECF 80-10 at 114-115.

## DISCUSSION

### I. Motions to Exclude Expert Testimony

A federal district court may only consider admissible evidence when deciding a motion for summary judgment. Fed. R. Evid. 104(a); *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993). The standard for the admissibility of evidence under Rule 702 is the same at summary judgment as at trial. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). Correspondingly, the Court begins with an assessment of the parties' challenges to the admission of expert testimony in this case.

#### A. Form of Submission

To start, Plaintiff argues that Black & Decker has failed to offer its expert reports in admissible form by attaching unsworn reports that do not satisfy the requirements for summary judgment affidavits or declarations under Rule 56(c)(4). ECF 87 at 4. Plaintiff is correct that FRCP 56(c) allows a party to object to the Court's consideration of materials cited in support of a motion for summary judgment that are not presented in an admissible form, meaning they are not supported by an affidavit, declaration, or sworn to in conformity with 28 U.S.C. § 1746. FRCP 56(c)(2), (4); *see Monclova v. City of N.Y.*, 726 F. App'x 83, 84 (2d Cir. 2018). Nonetheless, as each of Defendant's experts appeared for and testified under oath as to the opinions

4

contained in their reports, and as Defendants have since cured the alleged defect by submitting affidavits from each of their liability experts, *see Capobianco v. City of N.Y.*, 422 F.3d 47, 55 (2d Cir. 2005), the Court **denies** the Plaintiff's request to exclude Defendant's expert reports as inadmissible hearsay.

**B. Admission of Rebuttal Opinions from Defendant's Experts**

Next, Plaintiff has asked the Court to preclude the Defendant's liability experts, Mr. Pfreundschuh, Mr. Bodine, and Mr. Knox, from offering rebuttal opinions that are not supported by their initial reports due to Defendant's decision to submit no rebuttal reports by the agreed upon deadline.

With the Court's approval, Plaintiff agreed to identify his expert witnesses and produce his reports by April 8, 2022, Defendant agreed to do the same by June 8, 2022, and both parties agreed to offer any intended rebuttal reports by August 5, 2022. ECF 62. It was additionally agreed that expert depositions would take place no later than October 7, 2022. These deadlines were complied with, except for that Defendant's experts submitted no rebuttal reports.

A party making disclosures of expert witnesses must do so "at the times and in the sequence that the court orders." FRCP 26(a)(2)(D). Federal Rule of Civil Procedure 26(a)(2)(B) requires submission of an expert report from all testifying experts prepared and signed by the witness containing, among

other things, "a complete statement of all opinions the witness will express and the basis of reasons for them." When "evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), [it must be disclosed] within 30 days after the other party's disclosure." FRCP 26(a)(2)(D)(ii). FRCP 37(c)(1) complements Rule 26(a) by providing that when a "party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

Rule 26(a)(2)(B) makes clear that an expert's report must contain a statement of "all opinions to be expressed and the basis and reasons thereof" for opinions about another expert's analysis that contradicts or rebuts another expert's testimony. The Court is not persuaded that rebuttal expert testimony is excepted from Rule 26's reporting requirements. *See Complaint of Kreta Shipping*, S.A., 181 F.R.D. 273, 277 (S.D.N.Y. 1998) (finding expert's trial affidavit that included rebuttal statements that were not included in the expert's prior reports violated Rule 26(a)(2)(B))). Therefore, Defendant's argument that Mr. Pfreundschuh, Mr. Bodine, and Mr. Knox each indicated willingness or intent to offer rebuttal opinions during the

deposition or at trial should the Plaintiff have questioned him about those opinions does not persuade the Court to exempt from any expert opinions that are not included in their reports from the Rule 26 reporting requirements.

As the Court finds that expert rebuttal opinions that are not supported by a report are excludable under FRCP 37(c)(1) for failure to submit rebuttal reports under FRCP 26(a)(2)(B), the Court must next assess whether to preclude Defendant's liability experts from offering rebuttal testimony at trial. Courts in the Second Circuit assess four factors on a motion to preclude expert testimony:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Patterson v. Balsamic*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Sceintific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

In this instance, the opinions that Plaintiff seeks to exclude are merely anticipated; Defendant's experts, as of yet, have given no opinions that lack support in their initial reports. Accordingly, the Court is not in a position to properly assess the Second Circuit factors. As Defendant's experts have yet to offer any rebuttal testimony, there is no indication that

Defendant has failed to comply with the discovery order. And without knowing the content of the rebuttal testimony, the Court is not in a position to assess its importance. Likewise, the Court cannot judge the prejudice Plaintiff may suffer by admission of rebuttal testimony. Thus, while the testimony of Defendant's experts may necessarily be limited by virtue of their decision not to submit rebuttal reports, the Court declines to decide at this point whether to exclude any of the Defendant's expert opinions made in rebuttal to the opinions of Plaintiff's experts.

For these reasons, the Court **denies** Plaintiff's request to preclude Defendant's liability experts from offering rebuttal testimony.

### C. *Daubert* **Motions to Exclude Expert Testimony**

The Court next addresses the parties' cross motions to exclude several expert opinions. Plaintiff has moved the Court to exclude the opinions of George H. Pfreundschuh, P.E., Thomas J. Bodine, and Erick H. Knox. ECF 81. Defendants have moved the Court to exclude the opinions of Plaintiff's liability experts Les Winter and Ruhi Arslanoglu. ECF 84. For the reasons that follow, both parties' motions are **denied.**

Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact and issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial court functions as a "gatekeeper" tasked with ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow. Pharm.*, 509 U.S. 579, 597 (1993). Though trial judges have "broad discretion" in this role, *United States v. Felciano*, 223 F.3d 102, 120 (2d Cir. 2000), Rule 702 makes clear that two prerequisites must be met before testimony of an expert witness can be admitted into evidence: (1) the witness must be properly qualified to testify as an expert on matters that are scientific, technical, or specialized in nature, *see Hodder v. United States*, 328 F. Supp. 2d 335, 345 (E.D.N.Y. 2004) (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997)), and (2) the expert's testimony must reliably assist the trier of fact in understanding the evidence or determining an issue of fact, *see Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001). An expert's proponent bears the burden of establishing the reliability of that expert's testimony by a preponderance of the

evidence. *See Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719 (E.D.N.Y. 2016). As established in *Daubert* and its progeny, the baseline of Rule 702 is expert testimony that, in the Court's discretion, is sufficiently reliable and relevant should be admitted. *Daubert*, 509 U.S. at 597 (1993).

*Daubert* requires a case-by-case evaluation of the reliability of an expert's testimony; the standards trial courts employ to make this assessment are "liberal and flexible." *Lara*, 174 F. Supp. at 729 (internal quotation and citations omitted); *see also Kumbo Tire Co., v. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). While *Daubert* identified a non-exclusive list of factors that trial courts may consider in their reliability assessment of an expert's opinion, including peer reviews, theoretical testing, error rates, and scientific standards, the Second Circuit, among others, has recognized that not all factors have applicability in every case. *See Amorgiano v. National R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (explaining that the *Daubert* factors are not a "definitive checklist or test ... [since] [t]he inquiry envisioned by Rule 702 ... is a flexible one and the gatekeeping inquiry must be tied to the facts of a particular case"); *see Zaremba v. General Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004) (recognizing that the list of factors set forth in *Daubert* "neither necessarily nor exclusively applies to all experts or in every case");

*Hilaire v. Dewalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 243 (E.D.N.Y. 2014) (noting that "any inquiry into reliability need not be limited to the four factors listed in Daubert [since] these guidelines must be applied with flexibility, particularly when the expert is offering opinions based on specialized personal knowledge rather than scientific studies"). As such, even where an expert has not pointed to scientific literature to support their opinion, an expert can "otherwise reliably utilize[ ] scientific methods to reach a conclusion." *Id.* The gatekeeping duty of the trial court is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." *Kumbo Tire Co.*, 526 U.S. at 152.

In the product liability context, "an expert witness is not strictly confined to [their] area of practice, but may testify concerning related applications; a lack of specialization affects the weight of the opinion, not its admissibility." *Lara*, 174 F. Supp. at 730 (quoting *Lappa v. Honda Motor Co., Inc.*, 857 F. Supp. 222, 226 (N.D.N.Y. 1994), *aff'd sub nom.*, *Lappe v. Honda Motor Co. of Japan*, 101 F.3d 682 (2d Cir. 1996)). In other words, an expert may testify on related applications upon which they can use their relevant education or background to form an

11

opinion despite their lack of specialization in the specific product at issue. *Id.*

### 1. Motion to Exclude Expert Opinion of George H. Pfreundschuh

Plaintiff first asks the Court to preclude the Defendants from introducing Mr. Pfreundschuh as an expert. Mr. Pfreundschuh proffers an expert opinion on the design safety of the DW716 miter saw as sold without a clamp, the adequacy of the warnings accompanying the subject saw, and the necessity of supplying a work clamp as standard equipment with the subject saw. Plaintiff challenges Mr. Pfreundschuh's qualifications, his lack of identification of any studies or peer reviewed literature to substantiate his opinions, and his failure to conduct tests to support several of his opinions. For these reasons, Plaintiff asks the Court to preclude Mr. Pfreundschuh from offering an opinion in this action.

Defendant asserts that Mr. Pfreundschuh's "opinions, as detailed in his report and testified to during his expert deposition, fit comfortably within his areas of expertise." ECF 84-14 at 7. Mr. Pfreundschuh is a professional engineer who earned a Bachelor of Science in mechanical engineering in 1988 and a Master of Science in mechanical engineering in 1990 and who is licensed to practice as an engineer in New York and New Jersey. Mr. Pfrendschuh is presently an engineering consultant

with Affiliated Engineering Laboratories, Inc., where he has
been conducting forensic engineering investigations and
evaluations related to engineering and safety evaluations since
2002. ECF 81-7 at 47-50. He has provided expert witness
testimony in more than sixty cases. ECF 81-7 at 50. Mr.
Pfreundschuh is additionally a member of the ANSI 01 Standard
Committee – "Safety Requirements for Woodworking Machinery," the
American Society for Testing and Materials – ASTM E34.10
Standard Development Table Saw Task Group, the American Society
of Mechanical Engineers (ASME), and the American Society of
Safety Professionals (ASSP).

The Court concludes that given Mr. Pfreundschuh's overall
background, education, training, and prior experience in the
field of engineering generally and with table saw and
woodworking machinery more specifically, he is adequately
qualified to render an opinion in this case concerning a miter
saw. *See Lara*, 174 F. Supp. 3d at 732-33. Mr. Pfreundschuh's
education and professional qualifications "permit him to analyze
a given set of circumstances, [as] he can through reading,
calculations, and reasons from known scientific principles make
himself very much an expert in the particular product even
though, [as the Plaintiff notes], he has not had actual
experience in its manufacture." *Lappe*, 857 F. Supp. at 226.

Next, Plaintiff challenges the reliability of Mr.
Pfreundschuh's opinions on account of his lack of reliance of
any studies or tests to support his opinions. Mr. Pfreundschuh's
report contains opinions based on his review of the case
documents, assessment of applicable codes and industry
standards, findings from three separate inspections of the
subject saw, demonstrations of Plaintiff's use of the saw, and
application of his education and training. That Mr. Pfreundschuh
did not look to peer reviewed studies nor perform any specific
testing on the saw does not impair the reliability of his expert
opinion as to the safety of the subject saw based on his
educational and professional experience in addition to his
assessment of the subject saw's compliance with industry custom
and standards. Any challenges to Mr. Pfreundschuh's opinions
based on his conclusions, report, and testimony go to the weight
of his testimony, not its admissibility. *See Sprayregen v. A.
Gugliotta Dev., Inc.*, 166 F. Supp. 3d 291, 301 (E.D.N.Y. 2016).
As Mr. Pfreundschuh's opinions are based on his technical and
specialized knowledge as required by FRE 702, the Court
concludes Defendant has demonstrated by a preponderance of the
evidence that Mr. Pfreundschuh's opinions are admissible.

The Court likewise finds no merit in Plaintiff's request
that Mr. Pfreundschuh be barred from testifying to any accident
reproduction he engaged in through the course of preparing his

14

report, in certain areas at trial. The Court additionally denies Plaintiff's request to bar Mr. Pfreundschuh from testifying on the topic of warnings. And finally, as Mr. Pfreundschuh was neither retained as a human factors expert nor offered any opinions regarding human factors in this case, the Court need not bar Mr. Pfreundschuh from testifying on the topic.

Accordingly, Plaintiff's motion to exclude the opinion of Mr. Pfreundschuh is **denied.**

### 2. Motion to Exclude Expert Opinion of Thomas J. Bodine

Plaintiff next asks the Court to preclude Defendant from introducing Mr. Bodine as an expert in this action. Mr. Bodine, another liability expert for the Defendant, proffers engineering opinions on whether the subject saw is defective in its design or manufacture, whether the saw is safe for its intended or foreseeable uses, industry standards for compound miter saws, and his assessment of whether and how the subject could have caused Mr. Woelfle's injury at issue in this case.

Mr. Bodine holds a bachelor's degree in mechanical engineering and master's degree in engineering management with over twenty years of experience in engineering positions at Stanley Black & Decker, Inc., or Black & Decker (U.S.) Inc. ECF 81-3 at 1. Mr. Bodine has been a Safety Assurance Manager in Stanley Black & Decker's Product Liability Group since 2013. ECF 81-3 at 1. In this position, he was responsible for many

products, including miter saws. ECF 81-3 at 1. Mr. Bodine is not
a doctor, medical professional, biomedical engineer, nor a human
factors expert. Nonetheless, the Court concludes Mr. Bodine is
qualified to offer expert opinions in this case on account of
his educational and professional background as well as his
familiarity with the subject saw.

Plaintiff argues that Mr. Bodine's testimony is unreliable
because he "never conducted any testing (aside from pulling the
saw blade up and down a few hundred times) or analysis related
to any of his opinions," and relied on no studies to support his
conclusions as to the design and safety of the subject saw. ECF
81-1 at 12. The Court finds this argument to be without merit.

Mr. Bodine prepared a report and provided deposition
testimony to share the outcome of his investigation into the
accident that is the subject of this case. He based his report
and opinion on his assessment of the subject saw and its manual,
examination and testing of an exemplar DeWALT DW716 miter saw,
UL Standard UL987 (Standard for Stationary and Fixed Electric
Tools, Eighth Edition, dated October 18, 2011), other miter saw
manuals, information the parties disclosed pursuant to FRCP 26,
Mr. Winter's report, and transcripts, exhibits and video of Mr.
Woelfle's deposition on July 12, 2019. ECF 81-3 at 1. Mr. Bodine
grounded his opinion on his application of his extensive
knowledge of mechanical engineering and miter saw design and

safety to the facts of this incident as disclosed in Plaintiff's
complaint and deposition testimony. Mr. Bodine's report
indicates he did in fact inspect the subject saw on two
occasions (ECF 81-3 at 4-5), calculated the forces applied with
Mr. Pfreundshuh and Mr. Winter in a joint inspection, and
participated in testing of the subject saw (ECF 81-3 at 5). Mr.
Bodine additionally testified in his deposition to running tests
on an exemplar saw in an unsuccessful attempt to reproduce the
wear patterns observed on the subject saw to no avail (ECF 81-4
at 28), which the Court finds is not evidence of lack of
testing, but rather may be probative of the Plaintiff's alleged
use of the subject saw with the guard disengaged, as Mr. Bodine
suggested in his report (ECF 81-3 at 13). Accordingly, the Court
concludes that the sources Mr. Bodine utilized constituted a
sufficient factual basis for his opinion and that he applied
reasonable principles in a reliable manner based on his
mechanical engineering expertise, in conformity with FRE 702.

The Court must next consider whether Mr. Bodine is
qualified to offer an opinion on the cause of Mr. Woelfle's
specific injuries. As the Second Circuit has explained, "because
a witness qualifies as an expert with respect to certain matters
or areas of knowledge, it by no means follows that he or she is
qualified to express expert opinions as to other fields." *Nimely
v. City of New York*, 414 F.3d 381, 399 n.13 (2d Cir. 2005).

Courts in this Circuit are in agreement that "biomechanical experts are permitted to opine as to general causation of injuries in motor accident cases; i.e., whether the force sustained by a 'plaintiff in the subject accident could potentially cause certain injuries.'" *Thomas v. YRC Inc.*, No. 16CIV6105ATHBP, 2018 WL 919998, at *5 (S.D.N.Y. Feb. 14, 2018) (quoting *Manlapig v. Jupiter*, 14 Civ. 235 (LGS), 2016 WL 916425 at *3 (S.D.N.Y. Mar. 10, 2016)). In *Morgan v. Girgis*, 07 CIV. 1960 (WCC), 2008 WL 2115250, at *5 (S.D.N.Y. May 16, 2008), the Southern District of New York held that a biomechanical expert is qualified to testify about the nature and force generated in an accident and how the accident could affect the human body, but may not testify as to whether the accident caused the plaintiff's specific injuries due to his lack of a medical background. The court relied on the reasoning of a Sixth Circuit case that determined that a biomedical expert was "qualified to give general opinions about causation," but not to give "*medical* opinions." *Laski v. Bellwood*, 2000 WL 712502, at *3 (6th Cir. May 25, 2000). Despite this assessment, the court affirmed the trial court's decision to permit the medical causation opinion. *Id.*

In this case, the Court concludes that the opinions Mr. Bodine intends to proffer regarding the causation of the Plaintiff's laceration are well within his expertise. Plaintiff

18

suggests that Mr. Bodine requires a medical degree to proffer

the following opinion:

> Mr. Woelfle's description of the incident and Mr.
> Winter's theory do not align with the factual evidence
> of the wound. In my opinion, Mr. Woelfle's injury is
> more consistent with him inadvertently putting his arm
> in the path of the blade as he lowered the head with
> his right arm with the lower guard defeated.

This opinion does not constitute a "medical opinion." It

reflects Mr. Bodine's expert assessment of the miter saw and the

manner in which Plaintiff testified to using it, based on which

Mr. Bodine drew a conclusion given the undisputed placement and

depth of Plaintiff's wound and Mr. Bodine's expert opinion of

the ways in which a user's arm could possibly be brought into

contact with the subject saw's blade. The Court finds a medical

degree is not required to form this opinion. Given Mr. Bodine's

extensive background in mechanical engineering and product

safety, he is clearly qualified to testify about the nature of

the accident, the mechanics of the subject saw, the effects that

use and misuse of the subject saw could inflict on the human

body under different conditions, and whether, under the use

conditions described by the Plaintiff, the incident could have

caused Mr. Woelfle's wound.

Plaintiff finally asks the Court to preclude Mr. Bodine

from giving any opinion on the topic of warnings as detailed in

his report and testified to during his deposition. The Court

concludes that Mr. Bodine's background, particularly as a Safety Assurance Manager for Black & Decker is sufficient to qualify him to proffer opinions regarding the subject saw's on-product warnings and manual.

For these reasons, Plaintiff's motion to exclude the testimony of Mr. Bodine is **denied**.

### 3. Motion to Exclude Expert Opinion of Erick H. Knox

Plaintiff next requests that the Court preclude Defendant's human factors expert, Mr. Knox, from testifying. Defendant retained Mr. Knox to perform a biomechanical accident analysis of the incident. Mr. Knox has submitted expert opinions on injury causation under the circumstances described by Plaintiff and given the mechanics and physics of the subject saw. He has also proffered opinions on the safety equipment and warnings accompanying the saw at the time of purchase by Plaintiff.

Mr. Knox holds a Bachelor of Science degree in engineering from Marquette University, and a Master of Science degree and Ph.D. in biomedical engineering from Northwestern University. ECF 81-5 at 5. Mr. Knox has extensive experience as a licensed professional engineer. He is currently employed as a principal engineer at Engineering Systems Inc., a multi-disciplinary professional engineering consulting firm and laboratory where he specializes in accident investigation and reconstruction, engineering and failure analysis, safety, and biomechanics and

human factors. ECF 81-5 at 6. Mr. Knox has 25 years of experience conducting accident investigations involving consumer products, including accident investigations involving miter saws, table saws, band saws, circular saws, and other power tools. ECF 81-5 at 6.

Given Mr. Knox's background in engineering and vast experience in the field of accident investigation and reconstruction of power tools—and miter saws in particular—the Court finds that he is qualified to testify as an expert in this case.

Moving to reliability, Mr. Knox based his report on his examination of materials received from the Plaintiff, Mr. Woelfle's deposition testimony, photographs, inspection of the subject saw and selected wood pieces, inspection and laboratory testing of an exemplar DW716 miter saw, review of Mr. Woelfle's medical records, and safety information provided with the product. ECF 81-5 at 2-13. During his deposition, Mr. Knox additionally discussed the reference in his report to a peer-reviewed, published study he had previously authored through the course of a separate but similar investigation and accident reconstruction involving a forearm injury from a comparable miter saw with no clamp.

The Plaintiff broadly challenges Mr. Knox's opinions as unreliable because he did not produce certain force

calculations, performed no tests using a clamp, and relied on a self-authored study. The Court disagrees. Contrary to Plaintiff's assertion, Mr. Knox did in fact conduct testing on an exemplar saw based on the Plaintiff's description of the incident. Moreover, Mr. Knox's authorship of a study examining a near-identical accident referenced in his report demonstrates his relevant expertise and extensive review of miter saw safety without clamps. Accordingly, Plaintiff's critique of Mr. Knox's report is insufficient to allow the Court to conclude that Mr. Knox's opinion was based on anything less than scientific, technical, and specialized knowledge as required by FRE 702.

Plaintiff further asserts that Mr. Knox's opinions on injury causation are improper as such opinions require a medical degree. For the reasons described above, this challenge lacks merit. Mr. Knox's qualifications, testing, and review of the medical records are sufficient to ensure the reliability of his opinion as to injury causation under FRE 702 and *Daubert*. His opinions reflect his assessment of the physics and scientific principles associated with human operation of the saw, including his assessment of whether a human arm could be brought into contact with the subject saw's blade in the manner described by the Plaintiff. No medical degree is required to form this opinion.

Accordingly, Plaintiff's motion to exclude the expert opinion of Mr. Knox is **denied.**

### 4. Cross-Motion to Exclude the Expert Opinions of Les Winter and Ruhi Arslanoglu

To establish his claim that the accident was caused by a design defect, Plaintiff seeks to offer the testimony of two liability experts: Les Winter and Ruhi Arslanoglu. Defendant has cross-moved the Court to exclude Plaintiff's liability experts.

As a threshold matter, Defendant's cross-motion to exclude Plaintiff's liability expert opinions is timely. A motion to exclude expert testimony is not a dispositive motion. Such a motion may have a dispositive impact when granted while a motion for summary judgment is still pending, as exclusion of a party's expert witness may inform the Court's assessment that summary judgment against that party is proper. Nonetheless, even under that circumstance, it is the motion for summary judgment that remains dispositive, not the motion to exclude expert testimony. Accordingly, Black & Decker's cross-motion to exclude the opinions of Plaintiff's liability experts filed after the March 3, 2023 deadline for dispositive motions was not untimely.

Defendant challenges the reliability of Plaintiff's expert opinions without raising a challenge to the qualifications of either expert. Defendant asserts that the "Plaintiff's liability experts are offering a novel, untested theory of liability" that

relies on speculation and an alternative version of the accident that is unsupported by Plaintiff's testimony.

According to Defendant, Plaintiff testified that the "workpiece 'slid' along the fence to the right, *without* jumping over the fixed fence," whereas the Plaintiff's liability experts' opinions rely on the theory that the blade became bound in the workpiece, causing the portion of the workpiece to the left of the blade to rotate counterclockwise with a force significant enough to throw Plaintiff's arm to the right and into the path of the blade, resulting in Plaintiff's injury.

The Court does not agree with the Defendant's contention that Plaintiff's testimony and the opinions of Plaintiff's liability experts are irreconcilable. The relevant portion of Plaintiff's testimony provides as follows:

A.    . . . I just start cutting, and it jumped. The saw jumped, and I – it pulled it to the – to the right, inwards towards the blade, and I just – it happened so quick." ECF 84-2 at 114-116.

Q.    Okay. But your testimony is that, just the way you just, it was pulled to the right?

A.    Right when I started – yes.

Q.    The question is to the right.

      . . .

A.    Yes.

Q.    To your right. Okay. And did – did the blade ever make its way through the material?

A.    No.

ECF 84-2 at 114-15.

> Q.   Your testimony is that the spindle slid to the right, correct?
>
> A.   Correct.
>
> Q.   Is there any – at any point did the spindle jump over top of the fixed fence?
>
> A.   No.
>
> Q.   All of the motion, if I'm correct, was – was to – to your right as you operated the saw?
>
> A.   Yes.

ECF 84-2 at 120.

At no point does Plaintiff testify that the workpiece slid "along the fence" under the path of the blade, only that the workpiece slid. To the contrary, Plaintiff's testimony that the blade never made its way through the material is consistent with Mr. Winter's explanation that the wood blade became bound with the workpiece. And Mr. Winter's opinion that the workpiece rotated counterclockwise, launching Plaintiff's arm into the blade, does not require a conclusion that the workpiece did not slide. Mr. Winter's inability to calculate with mathematical precision the force applied to Plaintiff's left hand does not undermine his opinion. Likewise, Mr. Arslanoglu's lack of an opinion on how far beyond the blade Plaintiff's hand might have travelled when thrown, the amount of force acting on Plaintiff's hand, the distance between Plaintiff's torso and the front of the saw, or on other factual details of the incident, does not

require a finding that Plaintiff's proffered expert testimony is not sufficiently reliable under *Daubert* and Rule 702.

For these reasons, Defendant's cross-motion to exclude, or alternatively limit, the opinions of Plaintiff's liability experts is **denied.**

## II. Sanctions for Spoliation

In its motion for summary judgment, Defendant asks the Court to dismiss Plaintiff's complaint as a sanction for spoliating critical evidence. Spoliation refers to the destruction of evidence. Under New York Law, spoliation sanctions may be appropriate where "a litigant, intentionally or negligently, disposes of critical items of evidence involved in an accident before the adversary has an opportunity to inspect them." *Kirkland v. New York City Hous. Auth.*, 236 A.D.2d 170, 173 (1st Dept. 1997). A party moving for dismissal as a remedy for the intentional or negligent destruction or loss of a piece of evidence must demonstrate prejudice. *Kirschen v. Marino*, 16 A.D.3d 555, 556 (2d Dept. 2005). Courts have also found dismissal to be a remedy where a party "alters, loses or destroys key evidence before it can be examined by the other party's expert" and which is "prejudicial to the . . . ability to present a viable defense." *Horace Mann Ins. Co. v. E.T. Appliances*, 290 A.D.2d 418, 419 (2d Dept. 2002). To warrant

dismissal, the Defendant must show "severe" prejudice. *Kirkland*, 236 A.D.2d at 174.

Defendant has raised two claims of spoliation against the Plaintiff: (1) that Plaintiff's liability expert Les Winter spoliated evidence by altering the condition of a screw on the subject saw before the Defendant's liability experts could examine it, and (2) that Plaintiff discarded the subject spindle he had been cutting when the accident occurred before the Defendant could examine it.

**A. Spoliation of the Miter Saw**

According to Plaintiff's deposition testimony, the lower guard that covers the blade of the subject saw during use was working properly at the time of the incident—in other words, it lowered to cover the blade as he attempted to cut into the workpiece. During a joint inspection of the subject saw, Plaintiff's liability expert, Les Winter, shared that during his initial private inspection of the subject saw on October 25, 2018 he observed that the lower guard was not functioning properly and, to match Plaintiff's description of the incident, he tightened a guard bracket screw to re-enable the guard. Mr. Winter documented the changes he made to the subject saw with photographs and written notes.

Mr. Winter's alteration to the saw was temporary, reversible, and reported to Defendant's liability experts. What

is more, Defendant's own liability expert likewise made alterations to the subject saw during their May 14, 2019 private inspection, including full removal of the guard. As a result, the Court concludes that while the fact that the lower guard was not operable at the time Mr. Winter first inspected the saw may be probative of the condition of the saw at the time of Plaintiff's injury, the temporary alteration does not warrant dismissal of Plaintiff's complaint. Defendant may question Mr. Winter at trial regarding his alterations and may question Mr. Woelfle as to the operation of the lower guard at the time of the injury.

## B. Spoliation of the Subject Spindle

Next, Defendant asserts that Plaintiff committed severely prejudicial spoliation of the evidence when he discarded the spindle he had been cutting at the time of incident before Defendant's liability experts had the opportunity to examine it. The Defendant sets forth that the spindle Mr. Woelfle had been cutting at the time of the accident is a critical piece of evidence. According to Plaintiff's liability expert, Mr. Winter, Plaintiff's injury occurred when the blade became "bound" in the spindle, pushing it into the space between the saw's fixed fences on either side of the blade and causing the portion of the spindle to the left of the blade to rotate counterclockwise with a force significant enough to thrust Plaintiff's left hand,

which was holding the workpiece, into the path of the blade. Defendant asserts that the condition of the spindle after the incident is vital to their defense: that if the spindle was fully severed—if it was cut clean—then Plaintiff's assertion that the blade became bound with the workpiece would be negated.

The Court disagrees that the absence of the spindle is sufficient to form the basis of such a drastic sanction as dismissing Plaintiff's complaint in its entirety. The record includes deposition testimony of a non-party witness identified by the Plaintiff, Mr. Vincent Brege, who testified to Plaintiff showing him the spindle after the accident. Mr. Brege testified to the condition of the spindle: according to Mr. Brege "it was mangled, like broken" on its end (ECF 80-27 at 99), and that "you can just see where the saw blade chewed it up. That's all you can see," (ECF 80-27 at 105). Mr. Brege's testimony is informative of the condition of the spindle after the incident and can advise the jury as to whether the saw cut clean through or whether the saw became bound in the spindle, causing Mr. Woelfle's hand to slide or be thrown into the path of the blade with the left side of the spindle.

For these reasons, the Court **denies** Defendant's motion to dismiss as a sanction for spoliation of evidence.

## III. Motions for Summary Judgment

### A. Summary Judgment Standard

A court shall grant summary judgment if the moving party carries their burden to show no genuine dispute as to any material fact and establishes that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant meets their factual burden, the opposing party must set out specific facts showing a genuine issue of material fact appropriate for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

While the Court must view all inferences to be drawn from the facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804

F.2d 9, 12 (2d Cir. 1986). "Mere conclusory allegations or denials" are not evidence and do not create genuine issues of material fact. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). The trial court's function when deciding a motion for summary judgment "is not to weigh the evidence or resolve issues of fact, but to decide, after resolving all the ambiguities and drawing all inferences in favor of the nonmoving party, whether a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

**B. Products Liability Law in New York**

In a federal action based on diversity jurisdiction, the law of the State of New York applies to all substantive issues. *Colon ex rel Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 81 (S.D.N.Y. 2001). Under New York Law, a plaintiff injured by an allegedly defective product can bring a claim against the product's manufacturer under one or more of four theories of liability: the theory of strict products liability, the ground of negligence, and an action in contract for breach of express or implied warranty. *See Victorson v. Bock Laundry Mach. Co.*, 37 N.Y.2d 395, 400 (1975). Under any action for recovery in a products liability case, the plaintiff must prove that the injury complained of was proximately caused by a defect in the product's design, manufacturing, or warnings. *See Fahey v. A.O.*

31

*Smith Corp.*, 908 N.Y.S.2d 719, 723 (2010). In other words, Plaintiff must prove the alleged defect in the product is a substantial cause of the incident causing their injury. *See Caccese v. Liebherr Container Cranes, Ltd.*, 53 N.Y.S.3d 59, 61 (2017). A plaintiff may only recover in such an instance when, at the time of the occurrence of their injury, the product was being "used for the purpose and in the manner normally intended or in a manner reasonably foreseeable." *Amatulli v. Delhi Constr. Corp.*, 77 N.Y.2d 525, 532 (1991).

Here, Plaintiff's complaint alleges products liability claims against the Defendant on account of a defect in the design, manufacture, and/or assembly of DW716 miter saws, in addition to inadequate warnings or failure to warn of latent dangers resulting from intended or foreseeable uses of the subject saw.

The heart of Plaintiff's evidence and argument lies in Black & Decker's undisputed design decision not to include a clamp as standard equipment for the DW716 miter saw. Plaintiff has offered no evidence through its experts or otherwise that the subject saw is defective in its assembly or manufacture or that the subject saw deviated from Black & Decker's design. And it is not in dispute that the Black & Decker neither manufactured nor assembled the subject saw. Accordingly, as Plaintiff has not pursued a manufacture or assembly claim that

is distinct from the design defect claim for failure to include
a clamp as standard equipment, the Court grants Defendant's
motion for summary judgment as to the Plaintiff's claims for
product liability under the theories of manufacturing or
assembly defects grounded in negligence, strict product
liability, and breach of warranty.

This Court's inquiry will accordingly be limited to whether
Defendant is entitled to summary judgment on the causes of
action grounded in defective product design and failure to warn.

### C. Defective Design Claims

"[A] defectively designed product is one which, at the time
it leaves the seller's hands, is in a condition not reasonably
contemplated by the ultimate consumer and is unreasonably
dangerous for its intended use" or an unintended but reasonably
foreseeable use, and "whose utility does not outweigh the danger
inherent in its introduction into the stream of commerce."
*Hoover v. New Holland No. Am., Inc.*, 23 N.Y.3d 41, 60-61 (2014)
(citation and internal quotation marks omitted).

Strict liability in New York in the defective design
context applies when "a manufacturer . . . places into the
stream of commerce a defective product which causes injury."
*Amatulli v. Delhi Const. Corp.*, 77 N.Y.2d 525, 532, 569 N.Y.S.2d
337, 571 N.E.2d 645 (1991). To succeed on a strict liability
claim, Plaintiff must show that a defective product caused the

33

Plaintiff's injury. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 154 (2d Cir. 1997). A prima facie case in strict products liability for design defects under New York law requires Plaintiff to show "that the manufacturer . . . marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing the plaintiff's injury." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983). The plaintiff bears the burden of establishing "that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Id.*

A plaintiff injured by an allegedly defective product may also seek recovery under the theory of negligence through a showing of duty, breach, proximate cause, and damages. A prima facie case in New York for negligence in the design of a product requires the Plaintiff to show: "(1) that the manufacturer owed plaintiff a duty to exercise reasonable care; (2) a breach of that duty by failure to use reasonable care so that a product is rendered defective, *i.e.* reasonably certain to be dangerous; (3) that the defect was the proximate cause of the plaintiff's injury; and (4) loss or damage." *BIC USA*, 199 F. Supp. 2d at 82. The premise of a negligence claim for products liability is that the Defendant failed to act reasonably in their design, testing, manufacturing, selling, inspecting, or marketing of a product.

*See Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75
A.D.2d 55, 61-66 (4th Dept. 1980).

It has long been recognized in New York that there is
little or no difference between a cause of action for a
negligent design defect and one for strict liability based on
defective design. *See Denny v. Ford Motor Co.*, 87 N.Y.2d 248,
662 N.E.2d 730 (1995). While the focus under a claim for strict
product liability is on whether the product as designed was
reasonably safe, the question under a negligence action is
whether the manufacturer acted unreasonably in designing the
product. *See Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107
(1983). Nonetheless, "[p]roof that will establish strict
liability will almost always establish negligence. [Under either
theory] [i]n a design defect case the court is concerned with
the balancing of the alternative designs available against the
existing risk while taking into account the cost of the proposed
alternative." *Lancaster Silo & Block Co. v. N. Propane Gas Co.*,
75 A.D.2d 55, 62, 427 N.Y.S.2d 1009, 1013-14 (1980). Given that
design defect claims under negligence and strict liability are
"virtually identical," it is common for courts to assess the two
claims together for purposes of summary judgment. *BIC USA*, 199
F. Supp. 2d at 83; *see also See Searle v. Suburban Propane Div.
of Quantum Chem. Corp.*, 263 A.D.2d 335, 700 N.Y.S.2d 588, 591
(3d Dep't 2000) ("[I]n a design defect case, there is almost no

difference between a prima facie case in negligence and one in strict liability.") (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258, 639 N.Y.S.2d 250, 662 N.E.2d 730 (1995)).

Analyzing both theories of liability together, the Plaintiff must first show that the product, as designed, posed a "substantial likelihood of harm." *Voss*, 59 N.Y.2d 102, 108, 450 N.E. 2d 204 (1983). Second, Plaintiff must show that a safer, technologically and economically feasible design alternative was available at the time of manufacture. *Fane v. Zimmer*, 927 F.2d 124, 128 (2d Cir. 1991); *Ruthosky v. John Deere Co.*, 651 N.Y.S.2d 717, 719 (3rd Dep't 1997). Generally, New York courts then apply a utility test through which the fact finder must balance the risks created by a product's design against its utility and cost to assess whether a product is unreasonably dangerous. *See Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 454 (S.D.N.Y.1999) (citing *Cover v. Cohen*, 61 N.Y.2d 261, 266–67 (1984)). The seven factors considered under this test include: "the likelihood that the product will cause injury, the ability of the plaintiff to have avoided injury, the degree of awareness of the product's dangers which reasonably can be attributed to the plaintiff, the usefulness of the product to the consumer as designed as compared to a safer design and the functional and monetary cost of using the alternative design." *Scarangella v. Thomas Built Buses, Inc.*, 93 N.Y.2d 655, 659 (1999) (citing *Voss*

*v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983)).
Additionally, a jury may take into account "the likely effects
of [liability for failure to adopt] the alternative design on
... the range of consumer choice among products." *Scarangella*,
93 N.Y.2d at 659 (citing Restatement [Third] of Products
Liability § 1, comment *f*). "The ultimate issue is whether the
product is reasonably safe, not whether it incorporated the
safest possible features." *BIC USA*, 199 F. Supp. 2d at 84
(citing *Cover*, 61 N.Y.2d at 272).

Finally, Plaintiff must establish that the design defect
proximately caused Plaintiff's injury. *Speller ex rel. Miller v.
Sears, Roebuck and Co.*, 100 N.Y.2d 38, 41 (2003). In New York,
the test requires that the Defendant's defective design be a
"substantial factor" in causing the injury. *Id*; *see also Voss*,
59 N.Y.2d at 107.

### D. The *Scarangella* Exception

Under New York law, an exception to the product utility
test exists where the alleged design defect is the absence of an
optional safety feature from the standard equipment sold
accompanying a product. Under this exception:

> The product is not defective where the evidence and
> reasonable inferences therefrom show that: (1) the
> buyer is thoroughly knowledgeable regarding the
> product and its use and is actually aware that the
> safety feature is available; (2) there exist normal
> circumstances of use in which the product is not
> unreasonably dangerous without the optional equipment;

37

> and (3) the buyer is in a position, given the range of
> uses of the product, to balance the benefits and the
> risks of not having the safety device in the
> specifically contemplated circumstances of the buyer's
> use of the product. In such a case, the buyer, not the
> manufacturer, is in the superior position to make the
> risk-utility assessment, and a well-considered
> decision by the buyer to dispense with the optional
> safety equipment will excuse the manufacturer from
> liability.

*Scarangella*, 93 N.Y.2d at 661 (1999). Where each of these prongs are satisfied, the buyer is in a better position than the manufacturer to assess the safety of the product, and thus it becomes the buyer who bears "the responsibility [of] the decision on [whether] optional safety equipment presents an unreasonable risk to users." *Id.* at 660.

Defendant asserts that the *Scarengella* test applies to the facts of this case as Plaintiff's core contention is that Black & Decker's failure to include a clamp as standard equipment accompanying the DW716 miter saw model constitutes a design defect. In seeking summary judgment, Black & Decker argues that it cannot be held liable for Mr. Woelfle's injuries because he was a knowledgeable user who chose not to purchase an optional safety device that Black & Decker offered.

Plaintiff disputes that the *Scarangella* defense is applicable to the facts of this case and moves the Court to grant his motion for partial summary judgment dismissing the *Scarangella* defense. According to Plaintiff, Defendant has

failed to establish the first element of *Scarangella* as the Plaintiff explicitly testified that he was unaware of the existence of clamps for use on saws. ECF 80-32 at 7.

The Court agrees that the Plaintiff's testimony raises a triable issue of fact as to whether he was actually aware of the availability of clamps as an optional safety device for the subject saw. *See Mariani v. Guardian Fences of WNY, Inc.*, 194 A.D.3d 1380, 1381 (4th Dep't 2021). While some New York courts have held that when "knowledge of available safety options is brought home to the purchaser, the duty to exercise reasonable care in selecting those appropriate to the intended use rests upon him," *Biss v. Tenneco, Inc.*, 64 A.d.2D 204, 207 (4th Dept. 1978), the more recent trend after *Scarangella* is that a Defendant who proves only that "knowledge of [the] available safety option [ ] [was] brought home" by the user, and the user elected not to purchase it, has failed to meet their initial burden at summary judgment to prove actual awareness of the available safety option, *Campbell v. International Truck & Engine Corp*, 32 A.D.3d 1184, 1185 (4th Dep't 2006) (internal citation and quotations omitted); *see also Mariani V. Guardian Fences of WNY, Inc.*, 194 A.D.3d 1380, 1381 (2021). The Court therefore finds that Defendant failed to meet its initial burden of demonstrating actual awareness of the availability of clamps as an optional safety accessory for the subject saw. As

39

Defendants have failed to meet their initial burden under *Scarangella*, the Court need not consider the remaining *Scarangella* factors under Defendant's motion for summary judgment. *See Passante v. Agway Consumer Prods., Inc.*, 12 N.Y.3d. 372, 381-82 (2009).

Nonetheless, Plaintiff is not entitled to summary judgment dismissing the *Scarengella* defense as a triable issue of fact remains as to Mr. Woelfle's actual knowledge of the availability of work clamps for use on the DW716 miter saw. First, Defendant has submitted evidence that Plaintiff was a highly knowledgeable consumer. Plaintiff testified to many years of professional and personal experience using miter saws dating back to 1987. He testified to his extensive use of various types of saws, to using miter saws for several hours in a day, sometimes for several days in a row, and to using miter saws to cut various angles for different purposes. According to his testimony, Plaintiff was comfortable using miter saws and never used a clamp in any of his past experiences regardless of what brand of miter saw he used, despite the fact that several miter saws sold at the time supplied a clamp as standard equipment. Plaintiff additionally testified that he was aware of the existence of clamps for welding, though allegedly not for miter saws. And finally, Plaintiff testified to reading the DW716 operator's manual—though he did not indicate when he did so—which

identifies clamps as an available safety device. For these reasons, Defendant has submitted sufficient evidence to raise a question of fact as to whether Plaintiff was actually aware of the existence of clamps as optional safety equipment at the time he purchased the subject saw.

On account of this genuine issue of a material fact, the Court denies Plaintiff's and Defendant's motions for summary judgment as to the *Scarangella* defense.

**E. Risk-Utility Balancing Test**

In support of the motion for summary judgment, Defendant submits the reports and testimony of two experts. First, Mr. George Pfreundschuh opined to the safety of the DW716 miter saw's design and suitability for its intended purpose and use. Mr. Pfreundschuh testified that the subject saw was built in accordance with prudent engineering and safety practice as well as industry accepted custom and did not violate any applicable design code or standard. Pfreundschuh Report at 37. According to Mr. Pfreundschuh, the applicable industry standard, which he identified as the Underwriters' Laboratories UL 987 Standard for Stationary and Fixed Electric Tools, Eighth Edition, dated October 19, 2011 (hereafter UL987), did not require clamps to be provided with miter saws. Black & Decker's second expert, Mr. Bodine, likewise testified that the subject saw was safe for its intended and reasonably foreseeable uses.

Nonetheless, the Court finds that Plaintiff has submitted sufficient evidence to withstand summary judgment under the risk-utility test as genuine issues of material fact remain with regard to the weight of the evidence concerning the subject saw's risks when balanced against its utilities and costs.

Plaintiff's expert, Les Winter, opined that the subject saw was "not reasonably safe and was defective." Winter Report p. 12. According to Mr. Winter, the applicable industry standard is found in a publication from the Power Tool Institute (PTI) titled "Safety Is Specific," which is self-described as "Guidelines for the safe operation of widely used portable and stationary power tools." According to the miter saw section of this publication, clamps should be used to secure a workpiece to the table to avoid injuries when making a cut. The PTI specifically instructs: "Never make free hand cuts. Holding the workpiece by hand is unstable and may lead to loss of control." Moreover, Mr. Winter opined that the DeWalt instruction manual for the DW716 subject saw "works in harmony with the PTI requirements" as it also instructs a user to clamp a workpiece to avoid operator injury. Winter Report p. 9. For these reasons, Plaintiff argues that the subject saw was unreasonably safe because it did not comply with the applicable safety standard or even the safety instructions of its own manual.

Plaintiff has also submitted evidence that the subject saw could have been designed safer. Mr. Winter concluded that equipping the subject miter saw with a clamp constitutes a safer alternative design that was available at the time Defendant manufactured the DW716 miter saw, that equipping the miter saw with the clamp does not impair the product's function, and that inclusion of the clamp would have been inexpensive and was common practice by other miter saw manufacturers. Winter Report pp. 12-13.

The role of balancing a product's risks against its utilities in products liability cases belongs to the jury. *See Voss*, 59 N.Y.2d at 108. "It will be for the jury to decide whether the product was not reasonably safe in light of all the evidence presented by both plaintiff and defendant." *Id*.

For the foregoing reasons, there exists an issue of fact as to whether the subject saw had a design defect under the risk-utility test for products liability as Plaintiff has presented sufficient evidence for a jury to conclude that the saw as sold without out a clamp presented a substantial likelihood of harm and that a safer design alternative existed at the time it was sold.

**F. Proximate Cause**

Defendant additionally argues that even assuming a design defect has been shown, Plaintiff cannot show that the defect was

the proximate cause of Mr. Woelfle's injury. As previously discussed, proximate cause is an essential element of Plaintiff's burden.

Defendant does not dispute the use of a clamp in this circumstance would likely have prevented Mr. Woelfle's injury, or in other words, that non-use of a clamp was a substantial factor in causing the injury. Instead, Defendant submits that the question is not whether use of a clamp would have prevented the injury, but whether, had Black & Decker supplied the clamp as standard equipment, Mr. Woelfle would have used the clamp to make this particular cut. In support of this argument, Defendant argues that a clamp was not required for this type of cut and that it was not Plaintiff's general practice to use clamps, not only for this type of cut, but for any cut using a miter saw. ECF 80-10 at 94. Under this line of reasoning, Defendant asserts that the absence of the clamp as standard safety equipment for the DW716 miter saw was inconsequential and not a substantial factor in causing the injury.

Nonetheless, based on Plaintiff's injuries, his use of the subject saw at the time of the accident, and the possibility that the miter saw's blade embedded in the workpiece rather than severing it and sharply forced the workpiece to rotate counter-clockwise, thereby pulling the user's left arm to the right towards the blade, Plaintiff has raised sufficient questions of

fact regarding whether the absence of the clamp as standard equipment was a substantial factor in his injury for purposes of proximate cause. "Proximate cause is a question of fact for the jury where varying inferences are possible." *Miranda v. City of New York*, 84 N.Y.2d 44, 51 (1994). In this case, a reasonable juror could make an inference that based on Mr. Woelfle's use of the subject saw and other miter saws in the past with no clamp, he would not have used the clamp in this circumstance. Alternatively, the jury could infer that had Black & Decker included the clamp as standard safety equipment, Mr. Woelfle would have learned of the existence of clamps as a safety feature for the DW716 miter saw, made a practice of using it, and used it in this instance. At summary judgment, the Court is tasked with drawing all reasonable inferences in favor of the non-moving party, and must accordingly give this second inference greater weight. For these reasons, Defendant's motion for summary judgment is denied on the issue of proximate cause.

**G. Failure to Warn**

In New York, failure to warn claims are identical under strict liability and negligence theories of recovery for products liability. *See Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 439 (S.D.N.Y. 1999). To establish a claim for failure to warn, a plaintiff must show that a "manufacturer has a duty to warn against dangers resulting from foreseeable uses about which

45

it knew or should have known and that failure to do so was the proximate cause of the harm." *Burke v. Spartanics, Ltd.*, 252 F.3d 131 (2d Cir. 2001). A manufacturer's duty to warn extends to "(1) warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known"; "(2) warn of the danger of unintended uses of a product provided the uses are reasonably foreseeable"; and "(3) warn against the dangers of foreseeable misuse of its product." *Liriano v. Hobart Corp*, 92 N.Y.2d 232, 240 (1998). An "adequate warning or instruction . . . is one that is understandable in content and conveys a fair indication of the nature and extent of the danger to a reasonably prudent person." *Cooley v. Carter-Wallace, Inc.*, 102 A.D.2d 642, 646 (4th Dept. 1984). A warning's location is also relevant, and a manufacturer may be held liable where a warning was included in the manual, but not on the product itself. *See, e.g.*, *Samyn v. Ariens Co.*, 177 A.D.3d 917, 919 (2d Dept. 2019) (finding manufacturer liable when snowblower's manual provided warning against putting hands near moving parts, but no warning was on the product itself); *LaPaglia v. Sears Roebuck & Co., Inc.*, 142 A.D.2d 173, 178 (2d Dept. 1988) (whether plaintiff would have heeded on-product warnings despite warnings in manual was a question for the jury).

    In some circumstances, a manufacturer's failure to provide adequate warnings does not lead to liability where the user was

already aware of the specific hazard that harmed them. *See Call v. Banner Metals, Inc.*, 45 A.D.3d 1470, 1471 (4th Dept. 2007); *Barclay v. Techno-Design, Inc.*, 129 A.D.3d 1177, 1180-81 (3d Dept. 2015) (finding no liability where injured party had actual knowledge of the specific hazard that caused their injury). The adequacy of a warning and the user's knowledge, however, concerns the "particular risk of harm" associated with the product. *Cooley*, 102 A.D.2d at 649. Accordingly, generalized directions on the proper use of a product or warnings that a product is dangerous without explaining the nature of the precise danger may be inadequate. *Id.*

In this case, Defendant argues that summary judgment on the failure to warn claim is warranted. Citing Plaintiff's deposition testimony, Defendant argues that Plaintiff was a highly knowledgeable consumer: he used the subject saw for several years without a clamp and without incident, he knew of the dangers of putting a body part in the path of the blade, and he read the manual. ECF 80 at 13 (citing ECF 80-1 at 90-94). According to Defendant, these facts are sufficient to establish that Plaintiff had actual knowledge of the specific potential hazard of cutting unclamped workpieces such that Black & Decker may not be held liable for failure to warn.

The Court disagrees. First, Defendant's motion for summary judgment does not dispute that Plaintiff's hand was

unintentionally brought into the path of the blade. While a dispute does exist as to whether Plaintiff's hand slid along the fence of the saw into the blade or was thrown into the blade when the workpiece was bent in a counterclockwise direction, Defendant has not asserted that Plaintiff intentionally positioned his hand in the path of the blade nor within the 6-inch "no hand zone" on either side of the blade. Accordingly, neither warnings against putting one's hand near the blade nor Plaintiff's knowledge of the danger of putting body parts near the blade are sufficient to excuse Black & Decker for liability for failure to warn in this case.

Second, a triable issue of fact exists as to the adequacy of the warnings contained in the manual for the subject saw. While the manual does, in several places, caution the user to "always use a work clamp to maintain control and reduce the risk of workpiece damage and personal injury," those warnings are clarified with explanations for when to use a clamp, for instance "when your hand will be dangerously close to the blade within 6 inches," or because of an irregularly shaped workpiece. ECF 80 at 14. In other words, it is unclear whether the manual is suggesting use of a clamp in all circumstances, or only in certain circumstances, none of which are applicable here. Moreover, those warnings never address the dangers of binding or kickback associated with failure to clamp a workpiece to the

table. *Id.* Defendant also does not assert that the product contained any on-product warnings to inform the user of the dangers of failing to use a clamp associated with kickback or binding. ECF 80-30. Finally, the manual for the subject saw is highly inconsistent. For instance, on the same page that the manual warns the user to "always use a clamp," the manual depicts an image of a "PROPER CUT" showing a user securing the workpiece by hand, without a clamp. In sum, the warnings contained in the manual do not clearly direct a user whether or not there is any danger associated with not using a clamp when the user can hold the workpiece more than 6 inches away from the blade and the workpiece is not an irregular shape.

"The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment." *Urena v. Biro Mf. Co.*, 114 F.3d 359, 365-66 (2d Cir. 1997). The facts of this case demonstrate the "intensely fact specific" nature of failure to warn claims, *Liriano*. 92 N.Y.2d at 243. Given the inconsistencies in the manual, the lack of warnings on the subject saw, and Plaintiff's alleged lack of knowledge of the danger of a kickback when making cuts without a clamp, the Court concludes that this case is improper for summary judgment.

Accordingly, Defendant's motion for summary judgment of Plaintiff's failure to warn claim is **denied.**

49

**H. Breach of Express and Implied Warranties**

Finally, Defendant's motion for summary judgment on Plaintiff's actions for breach of implied and express warranty action is unopposed. The Court therefore deems Plaintiff to have abandoned these theories, and any cause of action upon them is dismissed. *See Mortka v. K-Mart Corp.*, 222 A.D.2d 804, 804 (3d Dept. 1995).

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff's motion to exclude the opinions of Defendant's liability experts is **denied** (ECF 81); Defendant's cross-motion to exclude the opinions of Plaintiff's liability experts is **denied** (ECF 86); Defendant's motion for summary judgment is **granted in part and denied in part** (ECF 80); and Plaintiff's cross-motion for partial summary judgment is **denied** (ECF 85).

DATED at Burlington, in the District of Vermont, this 7th day of July, 2023.

<u>/s/ William K. Sessions III</u>
William K. Sessions III
U.S. District Court Judge